IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELITE WHEEL DISTRIBUTORS, INC.,

    Plaintiff,                                  Case No.:

vs.

CADENCE BANK INC,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Elite Wheels Distributors, Inc. ("Plaintiff"), by and through its undersigned attorneys, hereby sues Defendant, Cadence Bank Inc. ("Defendant" or "Cadence"), and in support thereof, respectfully states as follows:

### Nature of the Action; Jurisdiction, Venue, & Parties

1. This is an action for negligence and breach of fiduciary duty under Florida law.

2. Plaintiff is and, at all relevant times, was a corporation incorporated under the laws of the State of Florida, with a principal place of business in Tampa, Florida.

3. Defendant is a publicly traded commercial bank incorporated in the state of Mississippi, with a principal place of business in Tupelo, Mississippi. Defendant is registered as a foreign for-profit corporation in the State of Florida.

1

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), based on complete diversity of citizenship between Plaintiff and Defendant, and because the amount in controversy in this action exceeds $75,000, USD.

5. This Court has personal jurisdiction over Defendant pursuant to the Florida Long-Arm Statute, § 48.193. Defendant conducts and operates business inside Florida state lines, maintains a Florida registered agent as well as bank branches in Florida, and is registered with the State of Florida to conduct business in Florida. Moreover, Defendant committed tortious acts in Florida which caused injury to Plaintiff in Florida.

6. Venue is proper in this Court pursuant to either of 28 U.S.C. § 1391(b)(1) or (2), and 28 U.S.C. § 1391(c)(2).

**Facts Common to All Counts**

7. Plaintiff is a Florida-based designer, manufacturer, and distributor of wheels and wheel accessories, and a distributor of tires, in the automobile aftermarket industry.

8. Defendant is a commercial bank, and Plaintiff was a Cadence commercial business bank account holder during the timeframe wherein the facts give rise to these claims.

9. On July 20, 2022, at circa 11:19 PM EST, a wire transfer in the amount of $127,737.84 USD, was inadvertently initiated/scheduled by

Plaintiff via Defendant's online banking portal to be sent to a bank account owned by a Chinese company.

10. Plaintiff immediately attempted to cancel the scheduled wire transfer at issue via Defendant's online portal cancellation feature, but was unsuccessful due to (1) the design of the portal, which lacked a reasonable means to request a cancellation, or in the alternative, (2) Defendant's deficient design or maintenance of its online portal wire services features, which failed operationally when Plaintiff tried to utilize those features to cancel the inadvertently scheduled wire.

11. Shortly thereafter, at 11:31 PM on July 20, 2022, Plaintiff's President requested cancellation of the wire via a text message sent to his assigned Cadence personal banker, an employee of Defendant.

12. Plaintiff's President immediately followed the text message by utilizing Defendant's purportedly available customer service features to request wire cancellation, in particular by sending emails to both the Defendant's International Wire Department and the Defendant's Treasury Management Department requesting cancellation of the inadvertently initiated online wire transaction request.

13. Plaintiff's President also left multiple voicemails to his personal Cadence banker and the applicable Cadence wire and customer service departments requesting cancellation.

14. At 11:34 PM on July 20, 2022, within 15 minutes of the inadvertent wire request, Defendant's support team acknowledged receipt of Plaintiff's cancellation request with accompanying confirmation/case number 00127249.

15. On July 21, 2022, at 8:02 AM, immediately following the bank's opening, Plaintiff's President spoke with an employee in Defendant's "wire room" as well as another employee in Defendant's "treasury department"; both Cadence employees confirmed that Plaintiff's wire cancellation request was received, that a support ticket had been created by Cadence, and that the wire cancellation would be processed immediately, and both assured Plaintiff that the wire would be terminated in-house by Cadence.

16. At 8:28 AM on July 21, 2022, Plaintiff's President received a text from his personal banker at Cadence informing him that the banker was also working on the wire cancellation.

17. Plaintiff understood from these statements and conduct that Cadence was at that time both capable and in the process of successfully cancelling the inadvertently-scheduled wire transaction notwithstanding the prior failure of the Cadence's online portal's wire cancellation features, and thus Plaintiff need not immediately contact the receiving bank of the inadvertent wire to request the transaction be recalled or frozen on the receiving bank's end.  Therefore, in reliance on Defendant's purportedly

ongoing efforts to ensure cancellation/rescinding of the wire request, Plaintiff did not contact the receiving bank to request recall or freezing of the funds on the crucial morning of July 21, 2022.

18. At approximately 10 AM on July 21, 2022, Plaintiff's President received a call from a Cadence Bank manager advising him that the wire transaction had actually somehow not been cancelled or rescinded as promised and that the funds at issue - $127,737.84, USD – had been transferred out of Plaintiff's Cadence account to a bank account owned by a Chinese entity.

19. Prior to this, as noted above, Plaintiff received multiple assurances from Defendant employees, as well as a Cadence customer support ticket/confirmation, indicating that the wire request would be cancelled and not sent by Cadence, and the relevant funds would be returned to Plaintiff's account with Defendant.

20. Despite requesting cancellation of the wire mere minutes after it was initially requested, providing for more than ten hours for Defendant to accomplish that task, receiving multiple assurances from Defendant – including a Defendant "wire desk" employee moments after the bank opened for business the following morning – that the wire would be cancelled and further that Defendant was capable and equipped to cancel/rescind the transaction before it was fully processed, Plaintiff has not seen return of any among the inadvertently wired funds, or any form of credit for a single dollar of the funds at issue from Defendant.

21. In light of all of the above, Plaintiff alleges the following causes of action:

### Count I
### Negligence

22. Plaintiff hereby incorporates the allegations in paragraphs 1 through 21 as if fully set forth herein.

23. This cause of action seeks money damages against Defendant for negligence under Florida law.

24. Defendant owed Plaintiff duties by virtue of the following: Defendant, including by undertaking to design, implement, administer, and maintain client-facing and client-serving features, programs, and processes such as (1) an online portal for Cadence accountholders like Plaintiff with, among other purported features, online wire transfer initiation and cancellation features as well as customer service and customer support features, (2) customer service and support processes such as email contacts to various Defendant departments, *i.e.*, international wire and treasury management departments, as well as customer relationships with individual "personal banker" Cadence employees, as well as (3) contact options, including by phone, for Cadence clients to communicate with Cadence on important, time-sensitive matters relating to their accounts, such as client contact options that allowed clients to speak directly with the Cadence "wire desk" and other Defendant departments, owed duties of care to Cadence accountholders, including

6

Plaintiff (who was within the foreseeable-to-Cadence zone of risk of harm arising out of these Cadence features, programs, and processes) to design, implement, administer, and maintain those client-facing and client-serving features, programs, and processes with reasonable care.

25. Defendant also independently owed Plaintiff specific duties of care by virtue of its affirmative statements and conduct to Plaintiff undertaking to cancel/rescind the inadvertent wire after Plaintiff notified Defendant of the inadvertent initiation of the wire transfer.

26. For the reasons pled herein, Cadence breached the above duties to Plaintiff.

27. The above breaches each and together were direct and proximate causes of the injuries suffered by Plaintiff pled herein.

28. As a direct and proximate result of Defendant's negligent conduct, Plaintiff suffered substantial damages.

WHEREFORE, Plaintiff respectfully requests this Court enter a judgment against Defendant for actual and compensatory damages of $127,737.84 USD, plus consequential damages resulting therefrom, and for such other relief as this Court may deem just and proper.

### Count II
### Breach of Fiduciary Duty

29. Plaintiff hereby incorporates the allegations in paragraphs 1 through 21 as if fully set forth herein.

30. In light of the facts and circumstances pled herein, Cadence, via its exclusive control over the design and administration of its wire services and customer help/customer service processes, as well as its affirmative, specific promises to undertake additional services to Plaintiff – namely, that Cadence was capable of cancelling/rescinding, and was in the process of cancelling/rescinding, the inadvertent wire – was, during the July 20-21, 2022, time periods pled herein, Plaintiff's fiduciary.

31. Cadence knew or had reason to know that Plaintiff had placed its trust and confidence in Cadence to effectuate cancellation/rescinding of the inadvertent wire, including by virtue of (1) Plaintiff's use of Cadence customer support and service platforms that Cadence itself led Plaintiff to believe were available means to effectuate cancellation/rescinding of the wire, as well as (2) Plaintiff's direct dialogue with Cadence employees, including "wire desk" employees, during which Cadence represented that it was capable of cancelling/rescinding, and was in the process of cancelling/rescinding, the inadvertent wire.

32. Cadence breached its above-described duties to Plaintiff, including by virtue of conduct pled at paragraphs 10-17 herein.

33. As a result of Cadence's breaches of its fiduciary duties, Plaintiff suffered substantial damages.

WHEREFORE, Plaintiff respectfully requests this Court enter a judgment against Defendant for actual and compensatory damages of

$127,737.84 USD, plus consequential damages resulting therefrom, and for such other relief as this Court may deem just and proper.

Dated:  January 28, 2026                                    Respectfully submitted,


*/s/ Leighton Leib*                                                  */s/ David Knox*
LEIGHTON LEIB                                              DAVID KNOX
Florida Bar No. 011926                                     Florida Bar No. 0093779
lleib@knoxleib.com                                           dknox@knoxleib.com

**KNOX♦LEIB, PLLC**
514 N. Franklin Street, Ste 205
Tampa, Florida 33602
(813) 252-3622

*Attorneys for Plaintiff*